**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| S.W. by and through his Guardian Ad Litem WANDA WILLIAMS, | ) | No. CV 13-2881-PLA |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**PROCEEDINGS**

Wanda Williams ("plaintiff"), on behalf of S.W.,[1] filed this action on May 6, 2013, seeking review of the Commissioner's denial of S.W.'s application for Supplementary Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on June 7, 2013, and January 27, 2014.  Pursuant to the Court's Order, the parties filed a Joint

---

[1]   At the time this action was filed, Wanda Williams was appointed Guardian Ad Litem for her minor grandson, who will be referred to herein as "S.W."

Stipulation on January 27, 2014, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

On September 28, 2009, plaintiff filed an application seeking Supplemental Security Income payments on behalf of her minor grandson, S.W., alleging that he has been disabled since April 2, 2008, due to attention deficit hyperactivity disorder and bi-polar disorder.  [Administrative Record ("AR") at 19, 94-98, 102.]  After the application was denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 66-69, 71-77.]  A hearing was held on May 24, 2011, at which time plaintiff and S.W. appeared with counsel and both testified.  [AR at 35-63.]  A medical expert ("ME") also testified.  [AR at 38-44.]  On August 22, 2011, the ALJ determined that S.W. was not disabled.  [AR at 19-30.]  When the Appeals Council denied plaintiff's request for review of the hearing decision on December 7, 2012, the ALJ's decision became the final decision of the Commissioner.  [AR at 6-10, 14, 274-75.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence.  <u>Drouin</u>, 966 F.2d at 1257; <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

**IV.**

**<u>THE EVALUATION OF DISABILITY IN A CHILD</u>**

To qualify for disability benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

**A.     THE THREE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a three-step sequential evaluation process in assessing whether a child is disabled.  20 C.F.R. § 416.924.  In the first step, the Commissioner must determine whether the child is currently engaged in substantial gainful activity; if so, the child is not disabled and the claim is denied.  <u>Id.</u>  If the child is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the child has a "severe" impairment or combination of impairments causing more than minimal functional limitations; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>  If the child has a "severe" impairment or combination of impairments, the third and final step requires the Commissioner to determine whether the impairment meets, medically equals, or functionally equals an impairment in the Listing of Impairments ("Listings") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded; if not, a finding of nondisability is made and the claim is denied.  20 C.F.R. § 416.924.

/

/

/

**B.    THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS**

In this case, at step one, the ALJ found that S.W. "was a school-age child on September 28, 2009, the date [the] application was filed," and that he "has not engaged in substantial gainful activity since" that date. [AR at 22.]  At step two, the ALJ concluded that S.W. has the severe impairment of hyperactivity. [Id.]  At step three, the ALJ determined that S.W.'s impairment does not meet, medically equal, or functionally equal any impairment in the Listings. [Id.]  As a result, the ALJ concluded that S.W. is not disabled. [AR at 30.]


**V.**

**THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ erred at step three in considering whether S.W.'s alleged impairments equaled impairments in the Listings; (2) the ALJ improperly relied on the ME's opinion because the ME did not review all of the evidence; and (3) the ALJ erred in rejecting S.W.'s grandmother's testimony and other third party reports. [Joint Stipulation ("JS") at 3-10, 13-15, 17-22, 24.]


**A.    STEP THREE**

In determining whether a child's impairment or combination of impairments functionally equals an impairment in the Listings, the Commissioner must assess the child's functioning in six domains:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a)-(b).  To functionally equal an impairment in the Listings, the child's impairment or combination of impairments must result in a "marked" limitation in two of the domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2).  By contrast, an "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3).

4

Plaintiff argues that the ALJ's step three finding here that plaintiff's impairment or combination of impairments does not functionally equal an impairment in the Listings is not supported by substantial evidence.  [JS at 3-10, 13-14.]  Specifically, plaintiff contends that the medical evidence, including standardized test scores, demonstrates that S.W. has a "marked" impairment in three of the six domains: "Acquiring and Using Information, Attending and Completing Tasks, and Interacting and Relating [with] Others."  [JS at 5.]

Between 2009 and 2011, plaintiff was administered various standardized tests, including the California Achievement Test ("CAT"), four administrations of "District Wide Assessments," and the "California Standards Test."  [AR at 146, 239.]  S.W.'s 2009 CAT results in "Math" and "Reading" each yielded a "National Percentile Rank" of 2, while his scores in "Science" and "Spelling" each yielded a "National Curve Equivalent" score of 0.[2]  [Id.]  Based on his California Standards Test scores in "English-Language Arts" and "Math," S.W. was assigned a proficiency level of "F[ar] B[elow] B[asic]."  [Id.]

In his decision, the ALJ concluded that S.W. "[d]oes not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  [AR at 22.]  Specifically, in his assessment of the six domains, the ALJ assessed S.W. as having a "less than marked limitation" in "acquiring and using information" and "attending and completing tasks."  [AR at 25-26.]  With regard to "interacting and relating with others," "moving about and manipulating objects," "the ability to care for himself," and "health and physical well-being," the ALJ found "no limitation."  [AR at 27-29.]

The ALJ's step three decision that plaintiff's impairment or combination of impairments does not functionally equal an impairment in the Listings is not supported by substantial evidence because the ALJ failed to acknowledge S.W.'s standardized test results.  [See AR at 24-29]; Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) ("In essence, the ALJ developed his

---

[2]   While there is no indication in the record as to what the CAT scores specifically indicate, according to an entry in the "Gale Encyclopedia of Children's Health," the CAT "National Percentile Rank" reflects "the percentage of students in the national norm group who have scores below the student's score."  See Paula Ford-Martin, California Achievement Tests, ANSWERS, www.answers.com/topic/california-achievement-tests (last visited March 19, 2014).

evidentiary basis by not fully accounting for the context of materials or all parts of the testimony and reports."); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.") (internal citation omitted.)   Social Security regulations specifically provide that when such test results are available, they are the preferred method of documentation for purposes of assessing the severity of functional limitations.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(C) ("In most functional areas, there are two alternative methods of documenting the required level of severity: (1) Use of standardized tests alone, where appropriate test instruments are available; and (2) use of other medical findings. . . .  The use of standardized tests is the preferred method of documentation if such tests are available."); 20 C.F.R. § 416.926a(e)(ii) ("The medical evidence may include formal testing. . . .  When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a 'marked' or 'extreme' limitation in a domain.") (emphasis added). The ALJ failed to acknowledge these test results at all, let alone address evidence that S.W. performed "[f]ar [b]elow [b]asic" on several of the tests.  [AR at 146, 239]; see Noel ex rel. J.A.W. v. Colvin, 2013 WL 6797697, *3 (C.D. Cal. Dec. 20, 2013) ("The ALJ noted that a speech/language pathologist conducted an evaluation in April 2010, but inexplicably failed to consider the [formal test] scores and, specifically, the fact that [claimant]'s valid scores were three standard deviations below the mean pursuant to 20 C.F.R. § 416.926a(e)(3)(ii).  This was error."). Moreover, the ALJ erred to the extent he failed to explain why he did not rely upon S.W.'s standardized test scores in reaching his step three decision.  20 C.F.R. § 416.926a(e)(4)(iii)(B) ("When we do not rely on test scores, we will explain our reasons for doing so in your case record or in our decision.").  Accordingly, the ALJ's decision that S.W. does not medically or functionally equal any Listing is not supported by substantial evidence and remand is warranted on this claim. /
/
/

**B.   LAY WITNESS TESTIMONY**

Plaintiff contends that the ALJ erred in failing to properly consider the testimony and written statements of plaintiff, S.W.'s grandmother.  [JS at 18-22, 24.]

In determining the severity of a claimant's impairments and how the impairments affect his ability to work, lay witness testimony[3] by friends and family members who have the opportunity to observe a claimant on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); accord Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006); Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); 20 C.F.R. §§ 404.1513(d)(4), (e), 416.913(d)(4), (e). Such testimony "is of particular value" because those who see a claimant every day can often tell whether he is suffering or merely malingering. Smolen, 80 F.3d at 1289 (citation omitted). While an ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis," Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012), he may discount the testimony of lay witnesses only for "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir.1999).

In an undated Disability Report, plaintiff reported details of S.W.'s aggressive behavior, anger, difficulty focusing, and poor impulse control. [AR at 134.] She stated that S.W. often does not go to bed "at a decent hour because he is so full of energy," and that "every morning" he "jumps with a whole lot of energy." [Id.] She also indicated that it is difficult to get S.W. to focus on tasks such as getting dressed for school or doing his homework because he is "angry one minute and happy the next minute." [Id.] She reported that S.W. "won't take a bath, brush his teeth or wash his face," and that when she tries to make him do these things, "he runs[,] shout[s] and yell[s]." [AR at 136.]

At the administrative hearing, plaintiff testified that S.W. receives special tutoring at the YMCA for additional help with reading and math, that he has difficulty paying attention at school, and that he is "hyper" at home until she gives him his medicine, after which "he ends up going to

---

[3]   Lay witnesses include spouses, parents and other care givers, siblings, other relatives, friends, neighbors, and clergy. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4).

sleep." [AR at 52-53.]  She also explained that S.W. attends monthly counseling, sees a psychiatrist at Kaiser Permanente, and that he is waiting to get into group therapy. [AR at 57.]

In his decision, the ALJ's only reference to plaintiff's allegations is his statement that they are "credible to the extent that the claimant has a medically determinable impairment which could be expected to produce some symptomatology, . . . [but] the record as a whole does not support the allegations as to the extent, intensity and functionally limiting effect." [AR at 23.]

The ALJ's reason for rejecting plaintiff's allegations is too vague to achieve the level of specificity required for rejecting a lay witness' testimony. See Stout, 454 F.3d at 1054 ("the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony"); Carton v. Colvin, 2013 WL 3884030 at *6 (E.D. Wash. July 26, 2013) (finding that "the ALJ's general reference to the lay testimony as 'not consistent with the preponderance of the evidence' is too vague to constitute even a 'germane' reason for discounting the statements and comments of plaintiff's lay witnesses") (citation omitted).  As a result, the ALJ failed to provide a reason germane to plaintiff for rejecting her allegations regarding S.W.'s functional limitations.  See Dodrill, 12 F.3d at 919 ("Disregard of [lay witness statements] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work.").

Defendant argues that, "[i]n her third-party statements[, p]laintiff was internally inconsistent," and asserts that "[s]uch inconsistencies would be a proper basis for finding subjective testimony incredible and would properly serve as a proper basis for rejecting a lay witness['s] testimony." [JS at 23-24.]  Defendant's contention is unpersuasive.  In his decision, the ALJ did not state that he rejected plaintiff's testimony because it was internally inconsistent.  [See, generally, AR at 19-30.]  "Long-standing principles of administrative law require [this Court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citation omitted).

Where lay witness evidence is improperly rejected, that evidence may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when

lay evidence rejected by the ALJ was given the effect required by the Commissioner's regulations, it became clear that the plaintiff's limitations were sufficient to meet or equal an impairment in the Listings); see also Colombo v. Astrue, 2011 WL 2693203, at *8 (W.D. Wash. July 11, 2011) (recognizing holding in Schneider); Sexton v. Astrue, 2010 WL 2888975, at *10 (C.D. Cal. July 21, 2010) (same).  Because the ALJ failed to give any legally adequate reason to reject plaintiff's lay witness statements, let alone any reason that is germane to plaintiff, the Court credits as true plaintiff's statements concerning S.W.'s daily activities and his limitations resulting from his impairments.  On remand, the ALJ should take into account plaintiff's statements in determining whether S.W. is disabled.[4]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Varney v. Sec'y of Health and Human Servs. (Varney II), 859 F.2d 1396, 1401 (9th Cir. 1988); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96; Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).

Here, there are outstanding issues that must be resolved before a final determination can be made.  However, in an effort to expedite these proceedings and to avoid any confusion or

---

[4]    Plaintiff further contends that the ALJ erred by failing to mention or assess a statement in the record attributed to S.W.'s tutor at the YMCA, an individual identified as both a teacher and a child specialist.  [JS at 22; see AR at 271.]  On remand, the ALJ should also consider and discuss that statement to the extent it is relevant to the disability determination.

1    misunderstanding as to what the Court intends, the Court will set forth the scope of the remand

2    proceedings.   First, the ALJ is instructed on remand to credit as true plaintiff's statements

3    concerning S.W.'s limitations.

4          Second, in Issue No. 1, in addition to arguing that the ALJ erred in his step three analysis,

5    plaintiff maintains that the ALJ failed to determine whether several of S.W.'s alleged impairments,

6    including ADHD, mood disorder, and specific learning disability,[5] were severe. [JS at 3.] The Court

7    agrees. On remand, the ALJ shall reevaluate the medical evidence regarding each of these three

8    impairments and explain his reasons for finding them severe or nonsevere in his decision. See

9    Smolen, 80 F.3d at 1290 (explaining that "the step-two inquiry is a de minimis screening device

10   to dispose of groundless claims") (citation omitted); Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir.

11   1994) ("The Supreme Court has recognized that including a severity inquiry at the second stage

12   of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose

13   impairments are so slight that they are unlikely to be found disabled even if the individual's age,

14   education, and experience are considered.") (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S.Ct.

15   2287, 96 L.Ed.2d 119 (1987)).

16         Finally, the ALJ shall reevaluate, at step three, whether S.W. meets, or medically or

17   functionally equals in severity, an impairment in the Listings. In making this determination, the ALJ

18   shall address S.W.'s standardized test results in the record and, if he chooses not to rely on any

19   such scores, he shall explain his reasons for doing so. 20 C.F.R. § 416.926a(e)(4)(iii)(B) ("When

20   we do not rely on test scores, we will explain our reasons for doing so in your case record or in our

21   decision."). To the extent the ALJ is required to interpret S.W.'s standardized test scores in terms

22   of standard deviations, he should seek the assistance of an expert, as needed, to fully develop the

23   record so that he can make such an evaluation. 20 C.F.R. § 416.926a(e)(2)(iii), 416.926a(e)(3)(iii);

24   see Fontanez ex rel. Fontanez v. Barnhart, 195 F.Supp.2d 1333, 1357 (M.D. Fla. 2002) ("Th[e]

25

26       [5]   A student has a specific learning disability under the Individuals with Disabilities
     Education Act ("IDEA") if he or she has "a disorder in [one] or more of the basic psychological
27   processes involved in understanding or in using language, spoken or written, which disorder may
     manifest itself in the imperfect ability to listen, think, speak, read, write, spell, or do mathematical
28   calculations." 20 U.S.C. § 1401(30)(A).

formal testing . . . did not provide the ALJ (and the district court) with adequate information about [plaintiff's] functioning in terms of percentiles, percentages of delay, or age or grade equivalents. [Plaintiff's] standard scores were not converted to standard deviations so as to be useful in determining whether [plaintiff] had a 'marked' or 'extreme' limitation in a domain.   Absent standardized tests that measure functional abilities in terms of standard deviations, a judge cannot usually determine the presence or absence of an 'extreme' or 'marked' limitation.   Contrary to his duty to fully develop the record, the ALJ failed to determine the significance of [plaintiff's] low scores.").[6]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: March 19, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[6]   In light of the Court's decision, it is not necessary to address plaintiff's remaining contention that the ALJ improperly relied on the ME's testimony. [See JS at 14, 17-18.]  Plaintiff, however, is not precluded from raising this or any other issue on remand.